66 F.3d 327
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul D. TUNGATE, Defendant-Appellant.
 No. 93-6289.
 United States Court of Appeals, Sixth Circuit.
 Sept. 14, 1995.
 
 Before: NORRIS and SILER, Circuit Judges; and NEWBLATT, Senior District Judge.*
 PER CURIAM.
 
 
 1
 On December 7, 1992, defendant Paul D. Tungate was charged in a one count indictment with violations of 18 U.S.C. Secs. 922(g)(1), 922(a)(2), and 924(e) for being a convicted felon in possession of several specified firearms. Following the district court's denial of defendant's motions to suppress evidence and to dismiss, defendant entered a guilty plea on condition that he be allowed to appeal the denial of his motions as well as an objection made during the suppression hearing. Defendant identifies four assignments of error in this appeal: (1) the district court's denial of defendant's motion to suppress evidence that resulted from the illegal search of his motel room; (2) the district court's denial of defendant's motion to dismiss for the government's failure to comply with the Speedy Trial Act; (3) the district court's refusal to order disclosure of the confidential informant during the suppression hearing; and (4) the district court's sentencing of defendant as an armed career criminal. As we find error in the district court's denial of defendant's motion to suppress, we need not address the other three issues.
 
 I.
 
 2
 On July 17, 1991, Louisville Police Department Detective Rusty Wilson was contacted by a confidential informant who advised him that a number of firearms were being offered for sale by a man known as Paul Douglas True, a/k/a defendant Paul D. Tungate. Believing the firearms to be stolen, the detective agreed to meet with the informant and defendant in order to make an undercover purchase of the guns. Detective Wilson met with the informant and defendant between 11:30 p.m. and 12:00 midnight on July 17, 1991 at the San Antonio Inn, Louisville, Kentucky, at which time defendant showed the detective numerous firearms, ammunition and related items that were for sale. Defendant told Detective Wilson that he wanted six thousand dollars ($6,000) for all the weapons and other items, except for a Browning .380 caliber, semi-automatic pistol which defendant intended to keep for himself.
 
 
 3
 Detective Wilson talked with defendant for approximately forty-five minutes, attempting to separate defendant from his loaded Browning pistol. During this conversation, Detective Wilson proceeded to inspect the other weapons to ensure that they were not loaded. As defendant was persuaded to exit the room, leaving behind his loaded hand gun, defendant was arrested in the motel parking lot by Louisville Police detectives. Upon a search of the motel room, the detectives discovered a total of twenty-five firearms and a quantity of ammunition all of which, with the exception of the Browning pistol, had been offered for sale by defendant.
 
 
 4
 According to the government, probable cause for defendant's arrest and seizure of the firearms was based upon Detective Wilson's belief, as allegedly communicated from the informant, that the firearms possessed and offered for sale by defendant were stolen. As defendant was later discovered to have been a previously convicted felon, however, defendant was indicted by a federal grand jury as a felon in possession of firearms. It later was determined that the six firearms identified in the indictment were, in fact, among a large number of firearms that were stolen by defendant and another individual on July 16, 1991 from a location in Sellersburg, Indiana.
 
 
 5
 Following his indictment, on January 28, 1993, defendant moved to suppress evidence seized as the result of the allegedly illegal search of his motel room. A suppression hearing was held on May 26, 1993, at which Detective Wilson testified as to his role in the search of defendant's motel room, the seizure of the firearms, and defendant's arrest. The motion to suppress was denied at the hearing and later by written order on June 2, 1993.
 
 II.
 
 6
 The district court's ruling on defendant's motion to suppress, finding the existence of probable cause for the search and seizure and defendant's arrest, presents a legal issue subject to de novo review by this Court. United States v. Pasquarille, 20 F.3d 682, 685 (6th Cir.), cert. denied, 115 S.Ct. 481 (1994). Denial of a motion to suppress will be affirmed not only upon proper grounds relied upon by the district court, but also if the district court's conclusion can be justified for any reason. Id. Whether Detective Wilson had probable cause to conduct a search, to seize evidence, or to make an arrest is determined by "the facts and circumstances known to the officer[ ] at the time of the [challenged conduct]." Id.
 
 
 7
 In Pasquarille, another panel of this Court recently addressed the standard of review of a district court's determination relative to a motion to suppress, particularly upon a finding of the existence of probable cause. That opinion clearly sets forth the relevant standard:
 
 As noted by the Supreme Court:
 
 8
 [P]robable cause is a flexible, common sense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief[ ] that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required.
 
 
 9
 Texas v. Brown, 460 U.S. 730, 742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (citations and internal quotations omitted).
 
 
 10
 Moreover, whether probable cause exists should be determined by the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). "This totality of the circumstances analysis includes a realistic assessment of the situation from a law enforcement officer's perspective." United States v. Ferguson, 8 F.3d 385, 392 (6th Cir.1993) (en banc) (internal quotations omitted). As we have observed:
 
 
 11
 "The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of law breakers. From these data, a trained officer draws inferences and makes deductions ... that might well elude an untrained person.... Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."
 
 
 12
 United States v. Barrett, 890 F.2d 855, 861 (6th Cir.1989) (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).
 
 
 13
 20 F.3d at 685-86.
 
 
 14
 III. A.
 
 
 15
 At the suppression hearing in this case, Detective Wilson was questioned as to the basis for his belief that a crime was being committed, giving him probable cause for the warrantless search and seizure. On direct examination, Detective Wilson testified that defendant negotiated the sale with him for $6,000 (Tr. at 71)--actually a non-negotiable price as defendant "needed that much money for [the guns]" (Tr. at 69).
 
 
 16
 On cross examination, Detective Wilson was questioned more specifically as to his basis for probable cause:
 
 
 17
 Q. Now, you--I am not sure if you answered before. You were asked did this informant tell you the guns were stolen.
 
 
 18
 A. He had indicated to me on the phone--when I knew--When I called him back, he said this guy has a bunch of guns for sale. And I said something about are they stolen, and he indicated to me that he was in the presence of the guy and couldn't talk.
 
 
 19
 Q. So he didn't tell you that they were stolen?
 
 
 20
 A. But from past experience I know he wouldn't have even called me if they hadn't of been or that he believed that they were stolen.
 
 
 21
 Q. Did he tell you the guns were stolen?
 
 
 22
 A. At that point he really couldn't tell me that, yes, in fact, they were. But he knew due to the amount and what the guy wanted from them and where they were that he felt that they were.
 
 
 23
 Q. Was that a no, he didn't tell you the guns were stolen?
 
 
 24
 A. He couldn't. Well, like I said, no, he didn't because he was with Mr. True at the time.
 
 
 25
 (Tr. at 73-74). When asked why he didn't get a search warrant, after being let into the room by the informant in the presence of defendant, Detective Wilson responded that he "didn't think we needed a warrant at that point" (Tr. at 74).
 
 
 26
 On redirect examination, Detective Wilson was again questioned as to his belief that the firearms were stolen:
 
 
 27
 Q. You stated that you had reason to believe that there were stolen firearms in the room. What did you base that reasoning on?
 
 
 28
 A. Just the fact that I've worked with the informant forever, and he wouldn't call me. He knows I don't trade in guns, and I told him I was at a concert. And he said you need to get down here, this guy is trying to get rid of these things, and we may not be here tomorrow.
 
 
 29
 Q. Okay. So based on that and because the informant called you, then you believed they were stolen guns?
 
 
 30
 A. At that point there was no doubt in my mind. That's why I left my wife at the concert and headed that way.
 
 
 31
 (Tr. at 75-76).
 
 B.
 
 32
 At the hearing, the district court found that there was no fourth amendment violation in Detective Wilson's search of the room. Specifically, the judge found that:
 
 
 33
 THE COURT: All right. The Court has heard the evidence. I don't believe we have a Fourth Amendment problem here. It's clear from the evidence, even from the testimony from the defendant himself that he was in the room where the guns were found, that these--the informant and/or the officers--officer came into his room if not with defendant's expressed permission certainly with his tacit permission. Mr. Tinsley, I do believe it is irrelevant that the informant opened the door to let the officer in. The defendant had the right to if he--whenever--he did have a right to expect privacy in that room. But when either he or someone for him goes and opens the door and let's [sic] someone else in, he had the right to say don't open that door, or I am not going to open the door, I am not going to let anybody else in. But the fact that someone else opened the door without his objecting, and even from the defendant's own testimony he didn't object to these people being in his room. That--and then the guns were in plain view when they were seized. I don't believe that we have a Fourth Amendment problem. I don't even have to get to the question of whether or not this defendant had the possession of the gun. There is compelling evidence that he did, even out of his own mouth. So the motion to suppress will be overruled.
 
 
 34
 (Tr. at 76-77).
 
 
 35
 In the district court's ruling on defendant's motion to suppress, the court did not expressly address the question of probable cause. Nevertheless, because the district court found no problem with the search and seizure or arrest, one must infer that the court found sufficient probable cause for those actions. In its ruling, the Court instead focused upon whether Detective Wilson had violated defendant's right to privacy in his rented motel room. We agree with the district court that Detective Wilson's entry into the room presents no fourth amendment violation. We find, however, that based upon the facts entered into the record at the suppression hearing, Detective Wilson lacked sufficient probable cause to believe that the guns were stolen and that a crime had been or was being committed.
 
 C.
 
 36
 For there to have been probable cause not only to search the room and seize the firearms found therein, but also to arrest defendant, the facts available to Detective Wilson at that time must reasonably have made probable that the firearms were "contraband or stolen property or useful as evidence of a crime." Texas v. Brown, 460 U.S. at 742. Even as viewed from the perspective of Detective Wilson, an experienced police officer, his belief that the weapons were stolen property or that a crime was in commission was not reasonably made. The detective's conclusion is not supported by the totality of the circumstances.
 
 
 37
 Detective Wilson claims that he knew the firearms were stolen property because the informant would not have called him otherwise; however, the informant never expressed to Detective Wilson that the guns were stolen and Detective Wilson testified that due to the amount being sought for the guns the informant thought that they were stolen. Apparently, this belief was conveyed to Detective Wilson at some time after the arrest, as he also testified that the informant did not answer his question when asked whether the guns were stolen. Detective Wilson found probable cause in the informant's belief that the guns were stolen but did not know the basis for this belief at the time of the search and seizure or the arrest because the informant had not communicated that basis to the detective. The question is whether the information within Detective Wilson's knowledge at the time of the seizure and arrest amounted to probable cause to believe that the guns were stolen. We find that it did not.
 
 
 38
 Detective Wilson did not explain why he did not think a warrant was necessary. Of course, having been lawfully within the room, Detective Wilson could have seized any contraband located within plain sight. Nevertheless, unlike drugs, which are per se unlawful to possess, firearms are not in all instances obviously contraband items. Detective Wilson must have had reason to believe the guns were in some way unlawful to possess.
 
 
 39
 Detective Wilson did not indicate that he concluded that the guns were stolen, based upon the price requested for the quantity of guns offered for sale, but rather because of his belief that the informant was convinced that they were stolen. This approach is problematic for two reasons: (1) the informant never told Detective Wilson that he believed the guns to be stolen; and (2) Detective Wilson accepted what he assumed to be the informant's conclusion without even questioning the basis of the informant's opinion. While we might accept as reasonable Detective Wilson's first assumption, based upon his past work with this informant and his experience as a police detective, we cannot condone or approve of his acceptance of the informant's judgment without verifying that the informant had a reasonable basis for reaching his conclusion. We cannot allow our police to defer the probable cause determination to informants. In fact, the officer himself is the person who must possess probable cause before either conducting a search or seizure or effecting an arrest. In this case, Detective Wilson did not possess the requisite probable cause. Therefore, the search of the room, seizure of the firearms and arrest of defendant Paul D. Tungate was in violation of the Fourth and Fourteenth Amendments.
 
 IV.
 
 40
 There being no probable cause to make the arrest, to search the room, or to seize the firearms, defendant's conviction must be reversed. Had Detective Wilson applied for a warrant based upon the information then known to him, we are convinced that such a warrant would have--or at least should have--been denied. Because the police discovered defendant's identity, and the fact that he was a convicted felon, only as a result of his illegal arrest, that information cannot serve as the basis for his conviction in this matter. Therefore, defendant's conviction must be and is HEREBY REVERSED. Accordingly, this matter is REMANDED to the district court for dismissal of the charges against defendant.
 
 
 
 *
 The Honorable Stewart A. Newblatt, Senior Judge of the United States District Court for the Eastern District of Michigan, sitting by designation